UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

---

ROBERT CURTHOYS and SUZANNE CURTHOYS,

    Plaintiffs,

    v.

DIAMOND RESORTS INTERNATIONAL, INC., and DOES 1-100, inclusive,

    Defendants.

No. 2:20-cv-00760-MCE-CKD

**MEMORANDUM AND ORDER**

---

Robert Curthoys and Suzanne Curthoys ("Plaintiffs") filed this lawsuit under the California Business and Professions Code and Welfare and Institution Code, claiming that Diamond Resorts International, Inc., ("Defendant" or "Diamond") engaged in unfair competition and elder abuse. Plaintiffs originally initiated the present action in the Superior Court of California, County of Sacramento. Defendant subsequently removed the matter here pursuant to this Court's diversity jurisdiction under 18 U.S.C. § 1332. Presently before the Court is Defendant's Motion to Compel Arbitration (ECF No. 4), which Plaintiffs oppose (ECF No. 10). For the reasons stated below, Defendant's Motion is GRANTED.[1]

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

## BACKGROUND[2]

Plaintiffs are a retired couple who purchased a timeshare from Pacific Monarch Resorts, Inc. ("Pacific") in 1999 pursuant to an Application and Agreement to Purchase and Sell and Escrow Instructions ("Agreement").  Def's. Mot. of Removal, ECF No. 1, Ex. A, ¶¶ 1, 7.  For over twenty years, Plaintiffs were unable to schedule a week-long trip to the timeshare that coincided with a free week in their schedule.  Id. ¶ 8.  As such, Plaintiffs have been attempting to sell the timeshare since 2001.  Id. ¶ 9.  In 2011, Diamond's subsidiary purchased Pacific and its outstanding timeshare contracts.  Def's. Mem. P. & A. in Supp. of Mtn. to Compel Arbitration, ECF No. 4-1, at 4:24–28.  Subsequently, one of Defendant's sales agents attempted to convince Plaintiffs to convert their timeshare into Diamond's timeshare points; however, Plaintiffs refused.  Def's. Mot. of Removal, Ex. A, ¶ 11.  Two years later, Plaintiffs requested that Defendant take the timeshare back; however, this time Defendant refused.  Id. ¶ 12.  Plaintiffs then hired an attorney in an attempt to transfer the timeshare to a new buyer, but they were ultimately unsuccessful.  Id. ¶ 13.  Plaintiffs then terminated their counsel.  Id.

In 2017, Diamond created a new program called Transitions™, which allowed certain individuals—who met five specified criteria—to relinquish all or part of their timeshares back to Diamond.  Def's. Mem. P. & A. in Supp. of Mtn. to Compel Arbitration, at 5:7–14.  The specific requirement relevant here prohibits any individual wishing to participate in the program from being affiliated with a timeshare exit, resale company, or a firm.  Id.  In 2019, Plaintiffs, believing they qualified under the Transitions™ program, began the application process to relinquish their timeshare.  Def's. Mot. of Removal, Ex. A, p. 5.  Defendant denied their application, however, based on Plaintiffs' previous retention of legal representation, which purportedly precluded them from taking part in the program.  Id.

---

[2] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' Complaint and Defendant's Motion to Compel Arbitration.  ECF No. 1.

Plaintiffs thereafter filed this action in Sacramento County Superior Court. Id. at 1. Defendant subsequently removed the case here, where it now seeks to compel arbitration pursuant to the terms of the Agreement. Def's. Mot. of Removal, at 1. The arbitration clause in that Agreement provides:

> Arbitration of Disputes – Liquidated Damages. If Buyer fails to complete the purchase of the property because of a default of Buyer, Seller may pursue any remedy in law or equity that it may have against Buyer on account of the default; provided, however, that by placing their initials here, Buyer [initials] and Seller [initials] agree and instruct Escrow Holder as follows:
>
> . . . .
>
> C) Liquidated damages shall be payable to Seller out of Buyer's Purchase Money Deposit according to the following procedures.
>
> . . . .
>
> (4) If Buyer gives Escrow Holder Buyer's objection with the 20-day period, then the determination as to whether Seller is entitled to the disbursement of Purchase Money as liquidated damages, and every other cause of action that has arisen between Buyer and Seller under the Contract, shall be submitted to binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association.
>
> . . . .
>
> Notice: By initialing in the space below, you are agreeing to have any dispute arising out of any of the matters described in the "Arbitration of Disputes – Liquidated Damages" provision decided by neutral arbitration as provided by California law and you are giving up any rights you might possess to have the dispute litigated in a court and decided by a jury. By initialing in the space below, you are giving up your judicial rights to discovery and appeal unless such rights are specifically included in the "Arbitration of Disputes – Liquidated Damages" provision. If you refuse to submit to arbitration after agreeing to this provision, you may be compelled to arbitrate under the authority of the California Code of Civil Procedure. Your agreement to this arbitration provision is voluntary. We have read and understood the foregoing and agree to submit disputes arising out of the matters described in the "Arbitration of Disputes – Liquidated Damages" provision to neutral arbitration.

///

///

ECF No. 4-1, Ex. 1 at 4. Plaintiffs, disagree, arguing that: (1) the Agreement is not authenticated; and (2) the present dispute does not fall within the purview of the arbitration provision.[3]

**STANDARD**

Removing a state law claim to federal court through diversity jurisdiction allows a federal court to hear claims otherwise originating in state courts. 28 U.S.C. § 1332; 28 U.S.C. § 1446(c)(1). Thus, when removal occurs, a federal court has jurisdiction over state law claims. 28 U.S.C. § 1332. The federal court must then separate procedural rules and substantive law into two distinctions: state law and federal law. Erie R.R. v. Tompkins, 304 U.S 64, 78–79 (1938). Federal law governs procedural rules whereas state law governs substantive law. Id.

The California Arbitration Act ("CAA") governs the enforcement of arbitration agreements between contracting parties to an agreement. Cal. Code Civ. Proc. §§ 1280–1281.99. The CAA allows "[a] written agreement to submit to arbitration an existing controversy . . . [and] is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Id. at § 1281. Once a party petitions to arbitrate, "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless . . .(a) [t]he right to compel arbitration has been waived by the petitioner; or (b) [g]rounds exist for rescission of the agreement." Id. at § 1281.2(a)–(b).

California public policy favors arbitration. See Aguilar v. Lerner, 32 Cal. 4th 974, 983 (2004) (explaining that the detailed statutory scheme points towards resolving disputes through arbitration). However, "a party cannot be compelled to arbitrate a

---

[3] The Court concludes that the Agreement has been properly authenticated. See Decl. of Russel Burke, ECF 12-1, at 2:1–23. Indeed, although Plaintiffs purport to challenge the Agreement's foundation, they reference the Agreement in their Complaint and cite to it themselves in their own Opposition, thus effectively conceding its authenticity. See ECF No. 10 at 3-5. Accordingly, this issue will not be addressed further.

dispute that he or she has not agreed to resolve by arbitration." Daniels v. Sunrise Senior Living, Inc., 212 Cal. App. 4th 674, 680 (2013) (citing Buckner v. Tamarin, 98 Cal. App. 4th 140, (2002)).  The court must consider two questions when determining whether to grant a Motion to Compel Arbitration: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Bruni v. Didion, 160 Cal. App. 4th 1272, 1283 (2008) (quoting Banks v. Mitsubishi Motors Credit of America, Inc., 435 F.3d 538, 540 (5th Cir. 2005)).  The moving party "bears the burden of proving the existence of a valid arbitration agreement." Avila v. Southern California Specialty Care, Inc., 20 Cal. App. 5th 835, 844 (2018) (citing Garrison v. Superior Court, 132 Cal. App. 4th 253, 263 (2005)).

## ANALYSIS

To determine whether to grant the Motion to Compel Arbitration, the Court must determine first whether a valid agreement to arbitrate exists and then if the present dispute falls within the purview of the arbitration clause. Bruni, 160 Cal. App. 4th at 1283.  As shown below, Defendant has established both required elements here.

**A.   There Exists A Valid Agreement To Arbitrate.**

"Whether an agreement to arbitrate exists is a threshold issue of contract formation and state contract law." Avila, 20 Cal. App. 5th at 843.  Under California law there are four elements to establish a valid contract: "1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and, 4. A sufficient cause or consideration." Cal. Civ. Code § 1550.  There is no dispute here that a valid agreement exists.  This is supported by the Court's review of the record as well.

///

///

///

**B.     The Present Dispute Falls Within The Scope Of The Agreement's Arbitration Clause.**

The scope of arbitration depends upon the agreement between the parties. Molecular Analytical Systems v. Ciphergen Biosystems, Inc., 186 Cal. App. 4th 696, 705 (2010).  A party may only compel arbitration regarding matters that both parties agreed to.  Id.  Therefore, "'the terms of the specific arbitration clause under consideration must reasonably cover the dispute as to which arbitration is requested.'"  Id. (quoting Bono v. David, 147 Cal. App. 4th 1055, 1063 (2007)).  Courts distinguish terms of an arbitration clause into either a broad or narrow clause.  Rice v. Downs, 248 Cal. App. 4th 175, 186 (2016).  A broad arbitration clause uses language such as, "'any claim arising from or related to this agreement' or 'arising in connection with the agreement.'"  Id. (quoting Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720 (9th Cir. 1999)).  On the other hand, a narrow clause employs language like "'arising from' or 'arising out of' an agreement."  Id. at 186.  Broad arbitration clauses extend arbitration to "tort claims that may arise under or from the contractual relationship" whereas narrow clauses "encompass only disputes relating to the interpretation and performance of the agreement."  Id. at 186-87.  The burden of proving that the dispute does not fall within the scope of the arbitration clause rests with the party opposing arbitration.  Molecular Analytical Systems, 186 Cal. App. 4th at 705.  Any doubts about the scope of the arbitration agreement "are to be resolved in favor of arbitration."  Id.

Defendants correctly contend that the arbitration clause in the Agreement is broad.  The Agreement states: "you are agreeing to have any dispute arising out of any of the matters described in the 'Arbitration of Disputes – Liquidated Damages' provision decided by a neutral arbitration as provided by California law."  Def's. Mem. P. & A. in Supp. of Mtn. to Compel Arbitration, Ex. 1, at 20.  The phrase "any dispute arising out of any of the matters" constitutes a broad interpretation because it speaks to "any dispute" rather than simply a dispute "arising out of" the agreement.  Rice, 203 Cal. Rptr. 3d at 563–64.  Plaintiffs argue in their opposition that the Agreement contains a version of the

6

phrase "arising under," which is narrow and does not encompass the present disputes. Pls'. Opp. at 8:16–27.  To bolster their argument, Plaintiffs cite numerous federal court decisions that hold a broad interpretation of an arbitration clause that requires an inclusion of the phrase "related to."  Id.  In the present case, however, state law governs. Erie R.R., 304 U.S at 78–79.  Accordingly, Plaintiffs' reliance on federal law is misplaced.

      Plaintiffs next maintain that the arbitration provision in the Agreement only applies to claims regarding liquidated damages and not to the Agreement as a whole.  Pls'. Opp'n to Mtn. to Compel Arbitration, at 7:18–8:13.  This argument also fails.  The Agreement's arbitration provision uses broad language, which extends arbitration to any claims arising out of the Agreement.  See Rice, 248 Cal. App. 4th at 186 ("[C]ourts have held such arbitration agreements sufficiently broad to include torts, as well as contractual, liabilities so long as the tort claims 'have their roots in the relationship between the parties which was created by the contract.'") (quoting Izzi v. Mesquite Country Club, 186 Cal. App. 3d 1309, 1315–1316 (1986)); Def's. Mem. P. & A. in Supp. Of Mtn. to Compel Arbitration, Ex. 1, at 20.  It clearly requires arbitration for: (1) claims that "Seller is entitled to the disbursement of Purchase Money as liquidated damages," assuming "Buyer [had given] Escrow Holder Buyer's objection with the 20-day period"; and (2) "<u>every other cause of action that has arisen</u> between Buyer and Seller under the Contract".  ECF No. 4-1, Ex. 1 at 4.  Moreover, Plaintiffs' contrary reading of the arbitration clause would produce the absurd result that the parties would only have agreed to arbitrate claims that did not exceed $300, which was the cap on the recovery of liquidated damages.

      Plaintiffs then suggest that the present dispute falls outside the arbitration clause because the retrospective phrase "has arisen" requires filing a claim prior to closing the timeshare transaction.  Pls'. Opp'n to Mtn. to Compel Arbitration, at 8:14–9:23.  Again, this argument is unsuccessful because the broad interpretation of the Agreement's arbitration clause expands the arbitrability of claims.  See Rice, 248 Cal. App. 4th at 186 ("'A court must view the language in light of the instrument as a whole and not use a

1  disjointed, single-paragraph, strict construction approach.'") (quoting City of El Cajon v.
2  El Cajon Police Officers' Assn. 49 Cal. App. 4th 64, 71 (1996)).

3　　　　　　Finally, Plaintiffs argue that the Court, rather than an arbitrator, should hear the
4  claims because a provision in the "Attorney's Fees" section of the Agreement states: "In
5  the event legal action is commenced to enforce or to declare the effect of any provision
6  of this agreement, the court, as part of its judgment, shall award reasonable attorney's
7  fees and costs to the prevailing party."  Pls'. Opp'n to Mtn. to Compel Arbitration, at
8  10:1–6.  As with Plaintiffs' previous contention, this interpretation fails because Plaintiffs
9  cannot "use a 'disjointed, single-paragraph, strict construction approach'" to escape the
10 broad arbitration provision.  See Rice, 248 Cal. App. 4th at 186 (quoting City of
11 El Cajon v. El Cajon Police Officers' Assn., 49 Cal. App. 4th 64, 71 (1996)).  In
12 addition—as Defendant points out—the Attorney's Fees provision governs the scenario
13 where a court intervenes to compel arbitration; the provision does not supersede the
14 requirement of arbitration.  Def's. Reply Mem. P. & A. in Supp. Of Mtn. to Compel
15 Arbitration, ECF No. 12, at 6:22–7:20.  For the foregoing reasons, this Court concludes
16 that the present dispute falls within the scope of the Agreement's arbitration provision.
17 As such, the provision is enforceable against these parties, and it covers the instant
18 dispute.

19

20　　　　　　　　　　　　　　　　**CONCLUSION**

21

22　　　　　　For all the foregoing reasons, Defendant's Motion to Compel Arbitration, ECF
23 No. 4-1, is GRANTED.  This matter shall be submitted to final and binding arbitration
24 pursuant to the terms of the Agreement.  The case here shall be stayed in its entirety
25 until completion of the arbitration of Plaintiffs' claims.  Not later than ninety (90) days
26 following the date this Order is electronically filed, and every ninety (90) days thereafter
27 ///
28 ///

until arbitration is completed, the parties are directed to file a joint status report advising the Court as to the status of the arbitration proceedings.

      IT IS SO ORDERED.

Dated:  April 12, 2021

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE